UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

CIV. NO. 13-2647 (DSD/JSM)

YING XIONG, CHOUA VUE,

REPORT AND RECOMMENDATION

Plaintiffs,

v.

EVERBANK, FSB, et.al.

Defendants.

This matter came before the undersigned on defendants' Motion to Dismiss [Docket No. 6].  This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation by the District Court pursuant to 28 U.S.C. §636(b)(1)(A), (B), Local Rule 72.1, and the Second Amended Administrative Order issued by Chief Judge Michael Davis on October 31, 2013 [Docket No. 15].  Pursuant to this Court's Order of November 20, 2013 [Docket No. 20], this matter was decided on the parties' written submissions.

Plaintiffs seek to invalidate the foreclosure of the mortgage on their home. Plaintiffs assert three claims against defendants: (1) quiet title to determine adverse claims under Minn. Stat. §599.01; (2) declaratory judgment; and (3) slander of title.  For the reasons below, the Court recommends that defendants'[1] Motion to Dismiss be granted and plaintiffs' claims be dismissed with prejudice.

---

[1]      In the caption of their Complaint, in addition to suing Everbank, FSB, Mortgage Electronic Registration Systems, Inc. and MERSCORP Holdings, Inc., plaintiffs also purports to sue "all other persons unknown claiming any right, title, estate, interest, or lien in the real estate described in the complaint herein."  As "[t]here are no factual allegations sufficient to identify these unnamed defendants or state a claim against them," the Court recommends that all claims against them be dismissed.  See Sonsalla v. Mortgage Elec. Registration Sys., Inc., Civ. No. 13-659 (JRT/JSM), 2013 WL

I.      BACKGROUND

On or about September 6, 2013, plaintiffs sued defendants in state court.  Notice of Removal, Ex. A (Summons and Complaint) [Docket No. 1-1].  Defendants Mortgage Electronic Registration Systems, Inc. ("MERS") and MERSCORP Holdings, Inc. ("MERSCORP") removed the suit to Federal District Court on September 26, 2013, pursuant to 28 U.S.C. §1332(a).  Notice of Removal [Docket No. 1].  Everbank, FSB ("Everbank") consented to the removal.  Id., Ex. C.

The facts bearing on the motion to dismiss are as follows.  Plaintiffs entered into a Note and Mortgage ("Mortgage") with Guaranteed Rate, Inc. ("GRI") for property located in Saint Paul, Minnesota ("Property").   Complaint, ¶2, 6 [Docket No. 1-1].  Mortgage Electronic Registration System, Inc. ("MERS") was the nominee for GRI.  Id., ¶6.  Plaintiffs specifically denied that any named defendant or its predecessor in interest had the legal right to declare a default on the note.  Id., ¶7.  Plaintiffs pled that they "did not borrow money from any named Defendant."  Id.

On May 17, 2012, Juan Soto, an Assistant Secretary of MERS, executed an Assignment of Mortgage, which assigned the mortgage from MERS to Bank of American, NA ("BOA"), successor by merger to BAC Home Loan Servicing, LP Id., ¶13, Ex. 2 (Assignment of Mortgage from MERS to BOA).  The Assignment was recorded in the Ramsey County Recorder's office on May 23, 2012.  Id.  When Soto signed the Assignment of Mortgage, he was employed by BOA.  Id.

---

4052825, at *1 (D. Minn. Aug. 9, 2013) (citing Estate of Rosenberg ex rel. Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir.1995) (affirming dismissal of unidentified defendants about whom no factual allegations were made)).

On July 17, 2012, Susan Douglas, as Assistant Vice President of BOA, executed an Assignment of Mortgage assigning the Mortgage from BOA to EverBank.  Id., ¶14, Ex. 3 (Assignment of Mortgage from BOA to EverBank).  The Assignment was recorded in the Ramsey County Recorder's Office on July 25, 2012.  Id.

On October 2, 2012, Alan Proctor executed a Notice of Pendency & Power of Attorney to Foreclose ("NPPOA") as the Assistant Vice President of EverBank.  Id., ¶15, Ex. 4 (Notice of Pendency & Power of Attorney to Foreclose).  The Notice was drafted by the Shapiro & Zielke law firm ("Shapiro").  Id.  The NPPOA was recorded in the Ramsey County Recorder's Office on October 11, 2012.  The NPPOA authorized Shapiro to foreclose on the mortgage by advertisement and "to do any and all other things necessary . . . for the foreclosure of said mortgage."  Id.  Shapiro prepared a Notice of Foreclosure Sale, which was published for the first time on October 18, 2012. Id., ¶16, Ex. 5 (Sheriff's Certificate of Sale and Foreclosure Record).

A sheriff's sale of the Property was conducted on February 14, 2013.  Id., ¶17. EverBank appeared at the sale and bid the amount allegedly due on the note, $130,973.59.  Id., Ex. 5.  The Sheriff's Certificate of Sale and Foreclosure Record was recorded in the Ramsey County Recorder's Office on February 28, 2013.  Id.  Plaintiffs denied that EverBank had the right to exercise the power of sale in the mortgage or held the note on the date of the sheriff's sale.  Id.

Plaintiffs alleged that the foreclosure was void because plaintiffs' Mortgage was securitized and "because this is a securitized loan, there are unrecorded assignments of the mortgage that were executed shortly after the origination of the loan."  Id., ¶23.

Plaintiffs further alleged that the foreclosure was void for the following reasons: (1) there was no of-record evidence of Soto's authority to execute the May 17, 2012, Assignment of Mortgage; (2) there was no of-record evidence of Douglas's authority to execute the July 17, 2012 Assignment of Mortgage; (3) there was no of-record evidence of Proctor's authority to execute the October 2, 2012 NPPOA.  Id., ¶24.

Plaintiffs pled the following causes of action:

Count I sought a determination of adverse claims under Minn. Stat. §599.01, et. seq.  This Count alleged that in a quiet title action, defendant has the burden of proof, and consequently, defendant must prove its interest in the Property by a preponderance of evidence.  Id., ¶¶26-35.

Count II sought a declaratory judgment pursuant to Minn. Stat. §555.02 that "EverBank's interest in the Property and/or Mortgage is void," the foreclosure is void, and that plaintiffs remained the fee owners of the Property.  Id., ¶¶37-38.

Count III alleged slander of title based on defendants' drafting and recording of documents[2] that plaintiffs claimed were false and not executed by legally authorized persons, which evidenced a reckless disregard for the truth and which created a cloud on plaintiffs' title to the Property.  Id., ¶¶40-42.

As relief, plaintiffs sought a determination of the alleged adverse interests in the Property; a declaratory judgment that the Mortgage, Sheriff's Certificate of Sale, Assignments of Mortgage and NPPOA were void; and an order that plaintiffs are the fee

---

[2]      The Complaint does not identify these documents, but the Court assumed plaintiffs were referring to the first Assignment of Mortgage signed by Soto, the second Assignment of Mortgage signed by Douglas and the NPPOA signed by Proctor.

owners of the Property; and costs and disbursements.  Complaint, Prayer for Relief, ¶¶I, II.

The defendants[3] moved to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Defendants' Memorandum of Law in Support of Motion ("Defs.' Mem."), pp. 4-22 [Docket No. 8].  As to plaintiffs' quiet title claim, defendants contended that plaintiffs were simply wrong that all they needed to assert was that they were in possession of the Property and that defendants claimed an adverse interest.  Id., pp. 5-8.  According to defendants, this "burden shifting" argument has been uniformly rejected by courts to consider it.  Defendants' Reply Memorandum ("Defs.' Reply"), pp. 2-3 [Docket No. 18].  Defendants also argued that EverBank had full authority to foreclose because it was the mortgagee of record and defendants presented a valid chain of assignments of the Mortgage from MERS to EverBank. Defs.' Mem., p. 10.  Therefore, plaintiffs' theory that there are unrecorded assignments of the Mortgage was purely speculative.  Id.  Further, plaintiffs' claim that EverBank could not purchase the Property at the sheriff's sale because it was not the "holder of the note," (Complaint, ¶17), was merely a "repackaging" of the uniformly rejected "show me the note" theory advanced by plaintiffs' former attorney.[4]  Id., p. 7-8, Defs.' Reply, pp. 3-4.

---

[3]    FSB. MERS and MERSCORP joined together to bring their motion to dismiss.

[4]    This theory has been propounded in the past by plaintiffs' attorney William Butler. Butler was suspended from practice before the United States Court of Appeals for the Eighth Circuit on December 26, 2013.  In re Butler, No. 13–9013 (8th Cir. Dec. 26, 2013).  As a result, Butler was automatically suspended from practice before the District Court, effective December 26, 2013. See D. Minn. L.R. 83.6(b)(1); In re Butler, Misc. No. 13–49(MJD), ECF No. 10 (D. Minn. Jan. 14, 2014).   Plaintiffs are currently unrepresented by counsel.

Defendants also rejected plaintiffs' theory that the foreclosure was invalid because the Assignments and NPPOA were signed by individuals who lacked "of-record" authority to execute the documents. Id., pp. 11-12. Merely because Soto was employed by BOA when he signed the first assignment did not establish lack of signing authority. Id., p. 12. Further, plaintiffs were not parties to the assignments and, therefore, lacked standing to challenge the assignments based on an allegation that the signors lacked authority. Id.

Finally, defendants argued that plaintiffs' quiet title claim was barred by the doctrine of unclean hands because quiet title is an equitable claim requiring plaintiffs to come to court with clean hands. Id., pp. 15-16. Plaintiffs defaulted on their mortgage. Therefore, their claims were barred. Id.

As to plaintiffs' declaratory judgment claim, defendants asserted that the claim failed because it was based on plaintiffs' fatally flawed theories about the foreclosure and, at any rate, declaratory judgment is a remedy, not a cause of action. Id., pp. 17-18.

Defendants sought dismissal of plaintiffs' slander of title claim on the ground that plaintiffs' assertion that the defendant slandered title to the Property by drafting and recording false and invalid documents not signed by authorized persons was unsupported by any facts and, at any rate, plaintiff failed to plead malice, a necessary element of slander of title. Id., pp. 19-21.

## II.    LEGAL STANDARDS

In considering a motion to dismiss under Rule 12(b)(6), the pleadings are construed in the light most favorable to the non-moving party, and the facts alleged in the complaint must be taken as true.  Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986).  In addition, a court must afford the plaintiff all reasonable inferences from those allegations.  Blankenship v. USA Truck, Inc., 601 F.3d 852, 853 (8th Cir. 2010).  At the same time, to withstand a motion to dismiss under Rule 12(b)(6), litigants must properly plead their claims under Rule 8 of the Federal Rules of Civil Procedure and meet the principles articulated by the United States Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662 (2009) and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).

Under Rule 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  The pleading standard articulated by Rule 8 "does not require detailed factual allegations, but it [does demand] more than a unadorned, the-defendant-unlawfully-harmed-me-accusation."  Iqbal, 556 U.S. at 678 (internal quotation marks and citations omitted).  A "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Id. (quoting Twombly, 550 U.S. at 555).  Thus, to "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Id. (quoting Twombly, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 677 (quoting Twombly, 550 U.S. at 556).  "[T]he plausibility standard, which requires a federal court complaint to 'state a claim for relief that is plausible on its face, .

. . asks for more than a sheer possibility that a defendant has acted unlawfully." Ritchie v. St. Louis Jewish Light, 630 F.3d 713, 717 (8th Cir. 2011) (internal quotation and citation omitted).  "Determining whether a complaint states a plausible claim for relief will, . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

As a general rule, the Court may not consider materials "outside the pleadings" on a motion to dismiss, without converting the motion to dismiss to a motion for summary judgment.  Fed. R. Civ. P. 12(d).  "The court, however, 'may consider some materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings,'" without converting the motion into one for summary judgment.  See Little Gem Life Sciences, LLC v. Orphan Medical, Inc., 537 F.3d 913, 916 (8th Cir. 2008) (quoting Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999) (internal citation and punctuation omitted)); see also Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); Mattes v. ABC Plastics, Inc., 323 F.3d 695, 697, n. 4 (8th Cir. 2003).

For the reasons set forth below, the Court concludes that plaintiffs failed to state a claim for relief and therefore, defendants' motion should be granted.

III.    **DISCUSSION**[5]

In Minnesota, "[a]ny person in possession of real property personally . . . may bring an action against another who claims an estate or interest therein, or a lien thereon, adverse to the person bringing the action, for the purpose of determining such adverse claim and the rights of the parties, respectively."  Minn. Stat. §559.01.

In response to defendants' motion to dismiss the quiet title claim, plaintiffs contended that under Minnesota law they only had to plead that they possessed the Property and defendants had a claim adverse to them.[6]  Pls.' Opp. Mem., pp. 7-10.

---

[5]    This Court notes that plaintiffs did not object to the foreclosure within the redemption period under Minn. Stat. § 580.23(a), and therefore, arguably no longer have standing to challenge the foreclosure, a point defendants raised in their motion to dismiss. Defs.' Mem., pp. 16-17.  See Sorem v. Bank of New York Mellon, Civ. No. 13-290 (DWF/JSM), 2013 WL 4611115, *3 (D. Minn. Aug. 29, 2013); Cheng Lee v. Federal Nat. Mortg. Ass'n, Civ. No. 13-180 (DWF/SER), 2013 WL 2631904, *3 (D. Minn., June 12, 2013); Stein v. Chase Home Fin., Civ. No. 09-1995 (MJD/JJG), 2010 WL 4736828, at *6 (D. Minn. Aug. 13, 2010) (holding that a plaintiff could not challenge the validity of a foreclosure because the challenge was raised after the expiration of the redemption period), aff'd, 662 F.3d 976 (8th Cir. 2011)).   However, given that the Minnesota Supreme Court recently held that a foreclosure was void for failure to strictly comply with Minn. Stat. § 580.02(3), despite the fact the suit was filed after the redemption period (albeit standing was not addressed in this decision), Ruiz v. 1st Fidelity, 929 N.W.2d 53, 58 (Minn. 2013), the Court proceeds to analyze the merits of plaintiffs' claims and will not address the parties' arguments regarding the timeliness of the lawsuit.  Defs.' Mem., pp. 16-17Plaintiffs' Memorandum in Opposition to Motion to Dismiss ("Pls.' Opp. Mem."), pp. 13-14 [Docket No. 13].

[6]    The Minnesota Court of Appeals has rejected plaintiffs' argument that a quiet title claim premised solely on allegations that they were in possession of the Property and defendant had a claim adverse to them states a cause of action under Minnesota law. In a case similar to the instant suit and relying on the standards for pleading articulated in Twombly, the Court of Appeals stated:

> In their amended complaint, appellants summarily claim that they are in possession of their respective properties and that Deutsche Bank's mortgage liens are invalid.  Their only argument in this appeal is that these summary allegations

According to plaintiffs, once these elements are pled, the burden shifted to defendants to prove the validity of its claim.  Id.  Additionally, plaintiffs maintained the Federal Rules of Civil Procedure do not alter the burden of proof of their state law quiet title claim.  Id., p. 6.

Plaintiffs further contended that their quiet title claim was viable because a "MERS Servicer ID" look up for defendants' mortgage dated August 2, 2013, showed that BOA was the servicer of the mortgage and Ginnie Mae was an investor.  Id., pp. 11-12; Declaration of William Butler, Ex. 2 [Docket No. 14-1].  Plaintiffs claimed that this was a "statement against interest" as MERS rules adopted in July 2011 require that all foreclosures be done in the name of the note owner or agent acting at the direction of the note owner.[7]  Id., p. 11.

---

are sufficient to overcome a motion to dismiss.  We disagree.

Adopting appellants' position would mean that quiet-title claims will never be dismissed when merely the two facts of possession and invalid mortgage lien are alleged, without regard for how these facts would give rise to an entitlement to relief. This result undermines the court's duty to determine "whether the complaint sets forth a legally sufficient claim for relief." See Hebert [v. City of Fifty Lakes, 744 N.W.2d 226, 229 (Minn.2008)]. Beyond the summary facts alleged, appellants must present more than just labels or conclusions in their complaint to survive a motion to dismiss.

Mutua v. Deutsche Bank Nat. Trust Co., 2013 WL 6839723, at *2 (Minn. Ct. App. Dec. 30, 2013), rev. denied (Mar. 18, 2014).

[7]    Plaintiffs' argument is unclear, but they seem to be arguing that the MERS Servicer ID lookup shows that Ginnie Mae had an interest in the mortgage and when BOA assigned the mortgage to EverBank, it did so without addressing Ginnie Mae's interests.  Pls.' Opp. Mem., pp. 11-12.

Additionally, plaintiffs argued that EverBank lacked standing because it suffered no "injury-in-fact" and "to have a sufficient stake in the controversy, a party seeking eviction must have suffered an injury-in-fact." Id., pp. 12-13.

As to defendants' unclean hands argument, plaintiffs contended that "there is no definitive authority that holds that an action to quiet title is an equitable remedy and, therefore, it is not clear that the defense of unclean hands applies." Id., pp. 15, 17. Additionally, defendants cannot prove that plaintiffs did not "do equity" with respect to defendants because defendants failed to prove that plaintiffs defaulted on their mortgage. Id., p. 17.

Plaintiffs' arguments fail for many reasons.

First, plaintiffs' argument that the Court should apply the Minnesota state court pleading standards to their quiet title claim is meritless. Plaintiffs' former counsel Butler has made this exact argument in the past and the Eighth Circuit could not have been more emphatic in its response: "[w]e apply federal pleading standards—Rules 8 and 12(b)(6)—to the state substantive law to determine if a complaint makes out a claim under state law." Karnatcheva v. J.P. Morgan Chase Bank, N.A., 704 F.3d 545 548 (8th Cir. 2013); see also Dunbar v. EverBank Bank, N.A., 709 F.3d 1254, 1257 (8th Cir. 2013) (quoting Karnatcheva); Novak v. JP Morgan Chase Bank, 518 F. App'x 498, 501 (8th Cir. 2013) (quoting Karnatcheva); Gharwal v. Federal Nat'l Mortg. Ass'n, Civ. No. 13-685 (PJS/JSM), 2013 WL 4838904, at *2 (D. Minn. Sept. 11, 2013) (noting that the Eighth Circuit has "squarely and repeatedly rejected" this argument).

In addition, the Eighth Circuit in <u>Karnatcheva</u> rejected the "burden of proof" argument in a quiet title action advocated by plaintiffs.  704 F.3d at 548.  As the court explained in <u>Gharwal</u>:

> <u>Karnatcheva</u> rejected that argument, specifically holding that § 559.01 and the other authority on which [plaintiff] relies 'are not state substantive standards that govern the success of a quiet title claim.  <u>Karnatcheva</u>, 704 F.3d at 548. Whether or not the Eighth Circuit's holding was "error" is not for this Court to decide; <u>Karnatcheva</u> is binding precedent, and this Court must apply it.  The Court notes, however, that although he was addressing a different issue, plaintiff's counsel himself has conceded in the past "that, under Fed. R. Civ. P. 11, a quiet-title claim must be supported by an objectively reasonable basis for believing that the defendant's asserted interest in the property is invalid."  <u>Welk v GMAC Mortg., LLC</u>, 850 F. Supp.2d 976, 988 (D. Minn. 2012), aff'd, 720 F.3d 736 (8th Cir. 2013).  Here, plaintiff's quiet title claims are based only on conclusory statements and speculation, but no facts.  The claim fails under Rule 12(b)(6).

2013 WL 4838904, at *3.

Thus, this Court has reviewed plaintiffs' quiet title claim applying the standards governing Rules 8 and 12(b)(6) of the Federal Rules of Civil Procedure.

Second, mere allegations of a plaintiff's possession of the property and conclusory statements that the defendant's adverse claims are invalid are insufficient to state a claim for relief.  <u>See</u> <u>Karnatcheva</u>, 704 F.3d at 548 (affirming the district court's dismissal of the plaintiff's quiet title claim "because the plaintiff's pleadings, on their face, have not provided anything to support their claim that the defendants' adverse claims are invalid, other than labels and conclusions, based on speculation that transfers affecting payees and assignments of the notes were invalid."); <u>Yang Mee Thao-Xiong v. American Mortg. Corp.</u>, Civ. No. 13-354 (MJD/TNL), 2013 WL 3788799,

at *4 (D. Minn. July 18, 2013) (quoting Novak v. JP Morgan Chase Bank, N.A., Civ. No. 12-589 (DSD/LIB), 2012 WL 3638513, at *4 (D. Minn. Aug. 23, 2012), aff'd, 518 F. App'x 498 (8th Cir. 2013)) (finding that plaintiffs "'must state facts sufficient to allow the court to draw the reasonable inference that . . . she is in possession and that a defendant claims a right or title to the property, but has no such right or title.'").

The documents referenced in and attached to the Complaint show an unbroken chain of title documented through a recorded Assignment of Mortgage from MERS to BOA and from BOA to EverBank.  Complaint, Exs. 2, 3.  Thus, not only is there no factual support for plaintiffs' bald assertions regarding unrecorded assignments, the record shows the exact opposite—there were no unrecorded assignments of the Mortgage and the foreclosure was proper.

The "MERS Servicer ID Report," which was printed on August 2, 2013 and six months after the foreclosure, does not support plaintiffs' theory that the foreclosure was improper.  All that this screenshot reflects is that Ginnie Mae was a "Guarantor" and BOA was a servicer of the mortgage at some point in time.  This provides no factual corroboration for plaintiffs' theory that Ginnie Mae had an unrecorded interest in the mortgage.  See Butler v. Federal Nat'l Mortg. Ass'n, Civ. No. 12-2697 (SRN/TNL), 2013 WL 2145701, at *3 (D. Minn. May 15, 2013) (rejecting the same "evidence"–a screen shot from the MERS loan finder website showing Fannie Mae as the "investor" for the mortgage–and stating "this screen shot is only evidence that on October 3, 2012, Fannie Mae had an interest in the mortgage. It does not establish the allegations in the Complaint; rather, it is just the sort of 'shot in the dark' allegation that does not meet Rule 8's pleading standards.  Thus, not only is there no factual support for plaintiffs' bald

assertions, the record shows the exact opposite – the foreclosure and the subsequent quit claim deed were proper.").

Third, plaintiffs' claim that "documents" were "not executed by legally authorized persons," (Complaint, ¶53), "do[es] not hold up to even the slightest scrutiny." Simmer v. HSBC Bank, Civ. No. 13-1549 (DSD/AJB) 2013 WL 6244710, at *3 (D. Minn. Dec. 3, 2013) (plaintiff's allegations regarding individuals' alleged lack of authority to sign Notices of Pendency and Powers of Attorney failed because the allegations are "merely conclusory assertions without any factual allegations to support them."); Segura v. Federal Nat'l Mortg. Ass'n, Civ. No. 13-531(SRN/JJK), 2013 WL 3034096, at *2 (D. Minn. June 17, 2013) (rejecting "contention that nearly every individual who signed a document in support of the foreclosure did not have the authority to do so" as "implausible and speculative, just the sort of 'vague claims' that have been rejected repeatedly by courts in this District and by the Eighth Circuit Court of Appeals.") (citing Mine v. Federal Home Loan Mortg. Corp., Civ. No. 13–220, 2013 WL 2443852, at *4 (D. Minn. June 5, 2013); Welk v. Federal Nat'l Mortg. Ass'n, Civ. No. 12-2864 (SRN/TNL), 2013 WL 2155463, at *4 (D. Minn. May 17, 2013) ("[Plaintiff] insists that the individual who signed the assignment to Wells Fargo and the individual who signed the power of attorney allowing Wells Fargo to institute foreclosure proceedings did not have the authority to do so, and that the law firm and Trisko knew that the individuals had no authority but proceeded with the foreclosure anyway.  But there are no facts of any kind—no evidence pled supporting these allegations.").

Additionally, even there was any truth to plaintiffs' speculative statements about the lack of signing authority of Soto (as to the Assignment of Mortgage from MERS to

BOA), Douglas (as to the Assignment of Mortgage from BOA to Everbank) or Proctor (as to the PPNOA), plaintiffs suffered no injury in fact as a result and, therefore lack standing to pursue a quiet title claim on this basis.  See Novak, 2012 WL 3638513, at *6, aff'd, 518 F. App'x 498 (8th Cir. 2013) (dismissing plaintiff's complaint with prejudice and noting that they lacked standing to challenge any purported breach of a PSA); Karnatcheva, 704 F.3d at 547 ("The plaintiffs base this request for declaratory relief on allegations that their notes and mortgages were transferred to trusts underlying mortgage-backed securities and that their foreclosures violated the terms of the trust agreements relating to these mortgage-backed securities. But district courts in Minnesota have recently addressed this issue and have uniformly held that mortgagors do not have standing to request declaratory judgments regarding these types of trust agreements because the mortgagors are not parties to or beneficiaries of the agreements. We believe that the reasoning in these cases is sound, and we adopt it.") (internal citations omitted); Wolff v. Bank of New York Mellon, --F. Supp.2d--, Civ. No. 13-2175 (PJS/JSM), 2014 WL 641510, at *1 (D. Minn. Feb. 19, 2014), ("The Eighth Circuit has held that parties in plaintiffs' position do not have standing to raise this type of argument."); Sorem, 2013 WL 4611115, at *3 ("Plaintiffs base their claims on the primary argument that the foreclosure is void because unrecorded assignments exist, and in support Plaintiffs argue that BNYM's Pooling and Servicing Agreement requires that an assignment be executed in favor of BNYM. Plaintiffs lack standing to make this challenge.") (citations omitted); Quale v. Aurora Loan Services, LLC, Civ. No. 13-621 (JNE/AJB), 2013 WL 3166584, at *1 (D. Minn. June 20, 2013) ("Insofar as the Quales based their claims on the allegations that an individual lacked authority to execute the

Assignment of Mortgage, the Court rejects this argument because the Quales lack standing to make such a challenge, and even if they did have standing, their claims are fatally implausible and speculative."); <u>Forseth v. Bank of Am., N.A.</u>, Civil No. 13-38 (SRN/TNL), 2013 WL 2297036, at *5 (D. Minn. May 24, 2013) ("The allegations regarding unauthorized signatures on every document related to the foreclosure process for the Forseths' mortgage are similarly implausible and pure speculation.  But even if the signatures were unauthorized, the harm caused by the lack of signing authority is harm to MERS or BAC, in the case of Mr. Bruns, or BAC/Bank of America or Fannie Mae in the case of Mr. McDaniel and Ms. Girvan. There is no allegation in the Amended Complaint that any of these individuals falsely initiated foreclosure proceedings against the Forseths' property, and the documents in the public records belie such a claim in any event. The Forseths defaulted on their mortgage by not making payments as they promised. Even if all three of these individuals lacked signing authority, as the Forseths claim, they have suffered no injury as a result and therefore have no standing to pursue    claims.") (citations omitted); <u>Kaylor v. Bank of Am., N.A.</u>, Civ. No. 12-1586 (DSD/SER), 2012 WL 6217443, at *5 (D. Minn. Dec. 13, 2012) (finding that even if individual who effectuated the assignment of the mortgage did not have authority to do so, homeowners not a party to the mortgage assignment had no standing to challenge the assignment.); <u>Stinson v. U.S. Bank, N.A.</u>, Civ. No. 12-68 (SRN/AJB), 2012 WL 2529354, at *3 (D. Minn. June 12, 2012) ("[T]o the extent that the [plaintiffs] allege that the defendants did not comply with the provisions of the PSA, the [plaintiffs] have no standing to assert claims on this basis because they are not parties or third-party beneficiaries to such agreements."); <u>Greene v. Home Loan Servs., Inc.</u>,

Civ. No. 09-719 (DWF/JJK), 2010 WL 3749243, at *4 (D. Minn. Sept. 21, 2010)

("Plaintiffs do not have standing to bring their challenge regarding the securitization of

the mortgage or the Pooling and Service Agreement.  Even assuming this matter was

adequately pled, which it was not, Plaintiffs are not a party to the Pooling and Service

Agreement and therefore have no standing to challenge any purported breach of the

rights and obligations of that agreement.").

Fourth, plaintiffs' argument that the foreclosure is void because there is no "of

record" evidence of the individuals' power to execute the Assignments of Mortgage or

foreclosure-related documents finds no support in the law.  To foreclose a mortgage by

advertisement, the foreclosing party must meet the mandatory requirements prescribed

by the foreclosure by advertisement statutes.   Jackson v. Mortgage Electronic

Registration Systems, Inc., 770 N.W.2d 487, 495 (Minn. 2009).  In this regard:

> Section 580.02 contains three requirements that must be
> met before a mortgagee can foreclose by advertisement:
>
> (1) that some default in a condition of such mortgage has
> occurred, by which the power to sell has become operative;
>
> (2) that no action or proceeding has been instituted at law to
> recover the debt then remaining secured by such mortgage
> ...
>
> (3) that the mortgage has been recorded and, if it has been
> assigned, that all assignments thereof have been
> recorded....

Id. at 496 (quoting Minn. Stat. §580.02).

Minn. Stat. §580.05 governs the recording of mortgage assignments by an

attorney at law.  It provides:

> When an attorney at law is employed to conduct such
> foreclosure, the authority of the attorney at law shall appear

17

by power of attorney executed and acknowledged by the mortgagee or assignee of the mortgage in the same manner as a conveyance, and recorded prior to the sale in the county where the foreclosure proceedings are had. If such attorney be employed on behalf of such mortgagee or assignee by an attorney in fact, the attorney's authority shall likewise be evidenced by recorded power.

Minn. Stat. §580.05.

Minn. Stat. §507.413 states:

(a)     An assignment, satisfaction, release, or power of attorney to foreclose is entitled to be recorded in the office of the county recorder or filed with the registrar of titles and is sufficient to assign, satisfy, release, or authorize the foreclosure of a mortgage if:

(1) a mortgage is granted to a mortgagee as nominee or agent for a third party identified in the mortgage, and the third party's successors and assigns;

(2) a subsequent assignment, satisfaction, release of the mortgage, or power of attorney to foreclose the mortgage, is executed by the mortgagee or the third party, its successors or assigns; and

(3) the assignment, satisfaction, release, or power of attorney to foreclose is in recordable form. . . . .

Called "the MERS statute," Minn. Stat. §507.413 is a recording statute that creates no obligations and does not change the requirements of the foreclosure by advertisement statute; "rather, it uses recording to resolve disputes between parties who have no contractual relationship, but who lay claim to the same title." Jackson, 770 N.W.2d at 494 (citation omitted).

Reading all of these statutes together, it is evident that there is no legal requirement that the origin of an individual's or entity's "authority" to sign an assignment

of mortgage or a notice of pendency and power of attorney must be recorded in order to render the

For starters, "[s]ection 580.02 is strictly construed, and a foreclosing party must demonstrate "exact compliance" with the statute's requirements." Beecroft v. Deutsche Bank Nat. Trust Co., 798 N.W.2d 78, 83 (Minn. Ct. App. 2011), rev. denied (July 19, 2011) (quoting Jackson, 770 N.W.2d at 494). "Absent strict compliance with section 580.02, the foreclosure proceeding is void." Id. (citing Jackson, 770 N.W.2d at 494).

Further, "[t]he purpose of the statutory recording requirements is to ensure that a mortgagor has notice and an opportunity to redeem." Beecroft, 798 N.W.2d at 83 (citing Jackson, 770 N.W.2d at 495). Therefore, "the plain language of section 580.02 requires only that the mortgage and any assignment of the mortgage be recorded to entitle a mortgage assignee to foreclose by advertisement," and nothing more. Id.

There is nothing in Minn. Stat. § 507.413, § 580.02, § 580.05 or in any other statute that requires that the recording of the source of the authority to execute an assignment of mortgage or the authority to execute foreclosure-related documents by an attorney-in-fact. See Beecroft, 798 N.W.2d at 83 ("Indeed, Minnesota courts have recognized that the power to execute an assignment by an attorney in fact need not be recorded to satisfy the foreclosure-by-advertisement statute."); at 84 ("Applying the plain language of section 580.02, we conclude that there is no requirement to record the instruments authorizing Citi Residential to act as Ameriquest's attorney in fact for mortgage assignments and memorializing the election of the special officers to execute the mortgage assignment for Citi Residential on behalf of Ameriquest. Only the Beecroft mortgage and Ameriquest's assignment of the Beecroft mortgage to Deutsche

Bank by Ameriquest's attorney in fact are required to be recorded."); Molde v. CitiMortgage, Inc., 781 N.W.2d 36, 43 (Minn. Ct. App. 2010) (holding that "a document evidencing the authority of an attorney-in-fact to initiate a foreclosure by advertisement" need not be recorded in the tract index against the property); Yang Mee Thao-Xiong, 2013 WL 3788799, at *3 ("Moreover, there is no evidence that the assignment of the mortgage lacked proper authority under Minn. Stat. § 507.413.")

In sum, this Court concludes that the "strict compliance" standard applied by the Minnesota courts to the statutes governing foreclosures by advertisement extends only to the recording of mortgages, assignments of mortgages and the power to conduct foreclosure-related proceedings, and no more.

Fifth, the Court rejects plaintiffs' allegation that EverBank lacked authority to foreclose because plaintiffs "did not borrow money from any named defendant." Complaint, ¶7.   This allegation is nothing more than a variant of the meritless, completely discredited "show me the note" theory propounded in the past by plaintiffs' former lawyer, Butler.  See, e.g., Butler v. Bank of America, N.A., 690 F.3d 959, 962 (8th Cir. 2012) (the "show me the note" argument "is foreclosed by the plain language of Minnesota's foreclosure statute); Ebbighausen v. JP Morgan Chase Bank, N.A., Civ. No. 10–3120(JRT/LIB), 2013 WL 53836, at *7 (D. Minn. Jan. 3, 2013) ("the law of this Circuit clearly establishes that different entities can hold the promissory note and legal title to the mortgage, and that the holder of legal title to the mortgage need not possess the promissory note before it can institute foreclosure by advertisement.") (citing Stein v. Chase Home Fin. LLC, 662 F.3d 976, 979–980 (8th Cir. 2011) citing Jackson, 770 N.W.2d at 489–501)).

20

Sixth, plaintiffs' standing argument is meritless.  To the extent plaintiffs relied on case law regarding eviction actions to support that claim, (Pls.' Opp. Mem., pp. 12-13), those cases are irrelevant.  This is not an eviction proceeding.  More importantly, as the legal mortgagee of record, EverBank had standing to foreclose.  See Stein, 662 F.3d at 980 ("[T]he right to enforce the mortgage remains with the legal holder of the mortgage.").

Lastly, a quiet title action is a proceeding in equity and as such, a plaintiff who seeks to quiet title must come to court with clean hands.  Haubrich v. U.S. Bank Nat'l Ass'n, Civ. No. 12–565 (DSD/TNL), 2012 WL 3612023, at *3 (D. Minn. Aug. 21, 2012), aff'd, 720 F.3d 979 (8th Cir. 2013); see also Yang Mee Thao–Xiong, 2013 WL 3788799, at *4 (plaintiff's unclean hands in defaulting on her mortgage prevented her from seeking equitable relief); Stilp v. HSBC Bank USA, NA, Civ. No. 12-3098 (ADM/JJK), 2013 WL 1175025, at *4 (D. Minn. Mar. 20, 2013) ("Plaintiffs defaulted on their mortgage loan over four years ago. They seek to declare their mortgage invalid after defaulting; as such, they come to the present case with unclean hands.") (citation omitted).  Plaintiffs, having defaulted on their mortgage, come to court with unclean hands and are precluded from pursuing a quiet title claim.  Novak, 2012 WL 3638513, at *4 (citing Santee v. Travelers Ins. Co., 275 N.W. 366, 368 (Minn.1937) (finding that the plaintiffs had unclean hands because they were in default on their mortgage and, therefore, that they could not state a quiet title claim).

For all of these reasons, plaintiffs' quiet title claim fails and should be dismissed.

B.    <u>Slander of Title</u>

To state a claim for slander of title, plaintiffs must allege facts that show: (1) there was a false statement concerning the real property owned by the plaintiff; (2) the false statement was published to others; (3) the false statement was published maliciously; and (4) the publication of the false statement concerning title to the property caused the plaintiff pecuniary loss in the form of special damages.  <u>Paidar v. Hughes</u>, 615 N.W.2d 276, 279–80 (Minn. 2000) (citation omitted).   To plead malice, plaintiffs "must raise factual allegations sufficient to create a plausible claim that at least one of the [ ] parties acted with a reckless disregard for the truth, 'despite a high degree of awareness of probable falsity.'"  <u>Dunbar</u>, 709 F.3d at 1258 (quoting <u>Brickner v. One Land Dev. Co.</u>, 742 N.W.2d 706, 711 (Minn. Ct. App. 2007)); <u>see also</u> <u>Quevli Farms, Inc. v. Union Sav. Bank & Trust Co.</u>, 178 Minn. 27, 226 N.W. 191, 192 (Minn. 1929) (concluding that to be a malicious statement, it must be a "groundless disparagement of the plaintiff's title or property . . . made without probable cause.").   The filing of an instrument known to be inoperative is a false statement that, if done maliciously, constitutes slander of title. <u>Kelly v. First State Bank of Rothsay</u>, 177 N.W. 347, 347 (Minn. 1920).   Additionally, plaintiffs must establish that they relied on the alleged false statement.  <u>See</u> <u>Welk</u>, 850 F.Supp.2d at 993-94.

The Court finds the slander of title claim must be dismissed because plaintiffs alleged no facts from which this Court could infer that any of the defendants made a false statement, acted maliciously or that plaintiffs suffered any pecuniary loss from a publication concerning title to their property.   <u>See</u> <u>Ko v. Mortgage Electronic Registration Sytem</u>, Civ. No. 13-596 (JRT/AJB), 2013 WL 4052680, at *4 (D. Minn. Aug.

9, 2013) (dismissing similarly-pled slander of title claim).  Therefore, plaintiffs failed to state a claim for slander of title, and dismissal is required.[8]

### C.   Declaratory Judgment

A declaratory judgment is a remedy, not a cause of action.  See, e.g., Onvoy, Inc. v. ALLETE, Inc., 736 N.W.2d 611, 617–618 (Minn. 2007) (a declaratory judgment action may be maintained only where there is a justiciable controversy); Buck v. American Airlines, Inc., 476 F.3d 29, 33 n.3 (1st Cir. 2007) (noting that the Declaratory Judgment Act, 28 U.S.C. § 2201 "creates a remedy, not a cause of action").  In light of the Court's conclusion that plaintiffs' substantive claims must be dismissed under Rule 12(b)(6), "they are left with a remedy in search of right."  Scanlon v. Northwest Mortg., Inc., Civ. No. 11-3128 (MJD/TNL), 2012 WL 2885131, at *7 (D. Minn. July 13, 2012).  See also Lara, 2013 WL 3088728 at, *3 (finding that where plaintiff had failed to state a substantive claim, the Amended Complaint also failed to state a claim for declaratory judgment) (citing Weavewood, Inc. v. S & P Home Invs., LLC, 821 N.W.2d 576, [579] (Minn. 2012) ("A declaratory judgment is a procedural device through which a party's existing legal rights may be vindicated so long as a justiciable controversy exists.")).

---

[8]     The Court notes that a slander of title claim is subject to the heightened pleading standard of Fed. R. Civ. P. 9(b).  See Murphy v. Aurora Loan Servs., LLC, 699 F.3d 1027, 1032 (8th Cir. 2012) (Rule 9(b) applies to slander of title claims); Johnson v. Bank of New York Mellon, Civ. No. 13-2207(DSD/JSM), 2014 WL 129640, at *5 (D. Minn. Jan. 14, 2014); Ko, 2013 WL 3088728, at *4; Pope v. Federal Home Loan Mortg. Corp., Civ. No. 12-3094(SRN/JJG), 2013 WL 2251001, at *4 (D. Minn. May 22, 2013); Haubrich v. U.S. Bank Nat'l Ass'n, Civ. No. 12-565(DSD/TNL), 2012 WL 3612023, at *6 (D. Minn. Aug. 21, 2012), aff'd, 720 F.3d 979 (8th Cir. 2013).  Defendants did not argue in favor of dismissal based on plaintiffs' failure to meet this standard.  Suffice it to say, however, having failed to plead any facts to support a slander of title claim, the claim also fails to meet the Rule 9(b) standard.

Plaintiffs' claim for declaratory judgment must be dismissed because there is no legal basis for affording the remedy.

For all of these reasons, this Court recommends that plaintiffs' suit be dismissed with prejudice.[9]

## IV.   RECOMMENDATION

For the reasons set forth above, it is recommended that:

1.   Defendants' Motion to Dismiss [Docket No. 6] be **GRANTED.**

2.   This matter be dismissed with prejudice.


Dated:  June 23, 2014                    *Janie S. Mayeron*
                                          JANIE S. MAYERON
                                          United States Magistrate Judge

---

[9]    "Ordinarily dismissal of a [pleading] for failure to comply with Rule 8 should be with leave to amend." Michaelis v. Neb. State Bar Ass'n., 717 F.2d 437, 438-39 (8th Cir. 1983).   Nonetheless, when a complaint is so deficient or defective that the court is convinced that its defects cannot be cured through re-pleading, dismissal with prejudice is appropriate.   Such is the case here.   See McLean v. United States, 566 F.3d 391, 400 (4th Cir. 2009) ("to the extent . . . that a district court is truly unable to conceive of any set of facts under which a plaintiff would be entitled to relief, the district court would err in designating [a] dismissal to be without prejudice.  Courts, including this one, have held that when a complaint is incurable through amendment, dismissal is properly rendered with prejudice and without leave to amend."); McKesson HBOC, Inc. v. New York State Common Ret. Fund, Inc., 339 F.3d 1087, 1096 (9th Cir. 2003) (dismissal with prejudice is appropriate where "deficiencies in [plaintiff's] claims cannot be cured by amendment"); Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995) (a pro se litigant should be given chance to amend complaint unless it is "absolutely clear that the deficiencies of the complaint could not be cured by amendment."); Ikechi v. Verizon Wireless, Civ. No. 10-4554 (JNE/SER), 2011 WL 2118797, at *5, n. 6 (D. Minn. April 7, 2011) (recommending dismissal with prejudice of plaintiff's fraud claims because it was unlikely that plaintiff could cure the defective pleading on re-pleading), 2011 WL 2118791, at *3 (D. Minn. May 25, 2011) (adopting the Report and Recommendation of Magistrate Judge Rau regarding dismissal of plaintiff's fraud claims for failure to satisfy the particularity requirement of Rule 9(b)).

## NOTICE

Under D. Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **July 14, 2014**,[10] a writing that specifically identifies those portions of this Report to which objections are made and the basis of those objections.   A party may respond to the objecting party's brief within ten days after service thereof.   All briefs filed under this Rule shall be limited to 3500 words. A judge shall make a de novo determination of those portions to which objection is made.   This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.

---

[10]     The Court has allowed extra time for plaintiffs to file their objections to this Report and Recommendation, as they are currently unrepresented by counsel.